## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIAM AGHA,** | |
| *Plaintiff,* | **Case No.: 1:24-cv-874** |
| v. | |
| **THE REPUBLIC OF IRAQ** | |
| *Defendant.* | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE ENTRY OF DEFAULT

COMES NOW Plaintiff, Mariam Agha ("Ms. Agha" or "Plaintiff"), by and through her attorneys, The Spiggle Law Firm, and submits this Memorandum in Opposition to Defendant The Republic of Iraq ("Iraq")'s Motion to Vacate Entry of Default, and in support of, states as follows:

### Procedural History

After making several requests for Defendant to honor her employment contract and pay out the End of Service Bonus, Ms. Agha initiated the instant suit on April 1, 2024. (ECF 1). Ms. Agha caused Defendant to be served pursuant to the service requirements of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a)(3) ("FSIA"). (ECF 2-5). Service was effectuated on April 8, 2024. (ECF 6). Defendant's Answer or other responsive pleading was due within sixty days, on or before June 7, 2024. 28 U.S.C. 1608(d). Ms. Agha submitted an Affidavit for Default, and the Clerk of the Court made and Entry of Default against Defendant on June 12, 2024. (ECF 7-8). On July 12, 2024, Ms. Agha filed her Motion for Default Judgment and memorandum in support of

1

the same. (ECF 9-10). Because Defendant had yet to retain local counsel barred within the jurisdiction[1], Ms. Agha served a copy of the Motion for Default Judgment and supporting memorandum, pursuant to 28 U.S.C. 1608(e). (ECF 11-14). The proof of service was filed July 30, 2024. (ECF 15).

## Standard of Review

The Federal Rules of Civil Procedure states the Court "*may* set aside an entry of default." Fed. R. Civ. Pro. 55(c) (emphases added). Although there "is strong policy favoring adjudication on the merits" Strong-Fisher v. LaHood, 611 F.Supp2d 49 (D.D.C 2009), the Court has "broad discretion in controlling its own docket." Lewis v. District of Columbia, 791 F. Supp. 2d 136, 141 (D.D.C. 2011) (citing Edwards v. Cass Cnty., Tex., 919 F.2d 273, 275 (5th Cir. 1990). In reality, the deadlines imposed by the Federal Rules of Civil Procedure are designed to promote fairness to the parties who avail themselves of the court system, a maxim that Defendant seems to espouse in its motion. ECF 21 at 4; *see also* Lewis, 919 F.2d at 142 (citing In re Sch. Asbestos Litig., 977 F.2d 764, 795 (3d Cir. 1992) for the argument that dispositive motions promote fairness and judicial economy). The United States "has an interest in protected a foreign sovereign's interest." FG Hemisphere Assocs., LLC v. Dem. Rep. Congo, 447 F.3d 835, 838 (D.C. Cir. 2006). That interest already given great deference by the Foreign Sovereign Immunities Act. The foreign sovereign "bears the burden of proving" its defense based on its sovereign status. immunity. Phx. Consulting, Inc. v. Rep. Angl., 216 F.3d 36, 40 (2000) (citing Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C. Cir. 1985). The time to raise jurisdictional questions like those that Defendant attempts to raise in its Motion to Dismiss in accordance with Fed. R. Civ. Pro. 12(b)

---

[1] In response to Ms. Agha filing the Complaint, Defendant had retained Scott Caslow as counsel for the purpose of settlement negotiations. Caslow contacted undersigned counsel in June and July 2024, after Defendant's deadline to file an answer had passed but prior to the default entry. At the relevant time, Caslow was not barred in the District Court for the District of Columbia and made no attempts to appear *pro hac vice*.

are properly raised in the time provided by the FSIA to file and answer or other responsive pleading. *See* 28 U.S.C. § 1608(d).

<u>**Legal Analysis**</u>

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). This entry of default can only be set aside "for good cause." <u>Id</u>. at 55(c). In exercising its discretion under Rule 55(c), a "district court is supposed to consider whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." <u>Khochinsky v. Republic of Pol.</u>, 452 U.S. App. D.C. 373, 379, 1 F.4th 1, 7 (2021) (internal citations omitted).

I.     **Defendant's Actions After Being the Complaint Prove Its Default was Willful.**

Defendant cites to <u>Int'l Painters</u> for the proposition that "[t]he boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable. <u>Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.</u> 288 F.Supp. 2d 22 (citing <u>Gucci Am., Inc. v. Gold Center Jewelry</u>, 158 F.3d 631 (2d Cir. 1998)). The <u>Int'l Painters</u> Court went on to hold that, "[b]y relying on the mere existence of settlement negotiations as an excuse for failing to fulfill its responsibilities to the Court, however, defendant [] failed to protect its own interests in [the] litigation." <u>Id</u>. at 26. Having chosen this manner of proceeding, [defendant] also chooses the consequences." Id. (citing <u>Brand v. NCC Corp.</u>, 540 F. Supp. 562, 564 (E.D. Pa. 1982) for the proposition that a defendant was not entitled to vacation of a default judgment where it intentionally decided to ignore court action and instead engaged counsel

to negotiate settlement but not to litigate). "Parties engaged in litigation frequently discuss the possible settlement of their disputes, but the mere existence of such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders." Id. at 27 (quoting Simon v. Pay Tel Mgmt., Inc., 782 F. Supp. 1219); *see also* United States v. Topeka Livestock Auction, Inc., 392 F. Supp. 944 (N.D. Ind. 1975) (ongoing settlement negotiations are not a sufficient reason for a failure to file an answer).

Defendant's default was deliberate. After Ms. Agha's attempts to contact Defendant regarding her claims went unanswered for over six months,[2] she filed her Complaint on April 1, 2024. It was served on Defendant in accordance with the FSIA on April 8, 2024.[3] Defendant then retained counsel Scott Caslow in or around June 2024. Caslow contacted undersigned counsel via phone call on or about June 17, 2024, to discuss settlement. Several emails were exchanged between June 24, 2024, and July 1, 2024, but settlement was not reached. On July 5, 2024, at Defendant's direction, Caslow provided the contact information for Mr. Ali Fadhel, Second Secretary for the Legal Department of the Embassy, and Dr. Duraid Abbas, Deputy Chief of Mission for the Embassy to undersigned counsel via email in hopes to facilitate negotiations. Undersigned counsel contacted Mr. Fadhel and Dr. Abbas via email that same day. *See*, **Exhibit A, July 5, 2024, Emails**. That email went unanswered. Undersigned counsel contacted Mr. Fadhel and Dr. Abbas via email again on July 12, 2024, to inform them of the Default Judgment Motion that had been filed, to provide a courtesy copy, and to again seek a response on Ms. Agha's offered

---

[2] Ms. Agha's fully develops her attempts at settlement negotiations in her Memorandum in Opposition to Defendant's Motion to Dismiss. It is worth noting that in January 2024, Defendant mailed back a copy of the proffered Complaint to undersigned counsel's office. This was the first time that Defendant acknowledged existence of Ms. Agha's claims.

[3] 28 U.S.C. §1608(c)(2) provides that service is effective "as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed." The proof of service applicable to the method of service employed was provided to the court in accordance with the Court's *Clerk's Office Procedures for Service of Process on a Foreign Defendant*, § III(D).

settlement. *See*, **Exhibit A, July 12, 2024, Emails**. To date, no response has been given by Caslow, Mr. Fadhel, or Dr. Abbas.

Contrary to Defendant's assertions, Ms. Agha *did not* file a copy of the Complaint twice. The FSIA requires that "[n]o judgment by default shall be entered by a court of the United States . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. 1608(e). The statute continues, stating that "[a] copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." Id. The *Clerk's Office Procedures for Service of Process on a Foreign Defendant* states that default judgements are served in the same manner as the complaint and summons. *Clerk's Office Procedures for Service of Process on a Foreign Defendant*, §VII(B), https://www.dcd.uscourts.gov/service-process-foreign-defendants. The service rules require that, *inter alia,*  the Complaint and Summons must be translated into the official language of the country and mailed to the Minister of Foreign Affairs.[4] 28 U.S.C. § 1608(a)(3). Undersigned counsel read the statue to mean that any Motion for Default must be served in the same fashion.

The ECF filing system options required filing the July 12, 2024, filing in the same fashion as the initial Complaint. Ms. Agha caused the physical copy of the English and Arabic-translated documents to be delivered to the Clerk the same day, and filed a Return of Service certificate on July 30, 2024, indicating that the Motion for Default Judgment had been served in accordance with the FSIA. Had Defendant reviewed the filings, it would have understood the procedural posture of the case. Defendant's claim of confusion is belied by its alleged attempts to engage in settlement

---

[4] At the time the Motion for Default Judgment was entered, no Counsel for Defendant had noticed an appearance, despite Defendant's awareness of the suit and retention of local counsel for purposes of settlement negotiation. This necessitated the filing in accordance with 28 U.S.C. §1608(a)(3), rather than service counsel that made no appearance before this Court.

negotiations, all while refusing to engage in the instant action. The Defendant's knowledge of the suit is without question. There is absolutely no "doubt" that needs be "resolved" in its favor.

## II.    Setting Aside the Default Entry Would Prejudice the Plaintiff.

"The issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion." Acree v. Iraq, 658 F. Supp. 2d 124, 129 (D.D.C. 2009) (citing KPS & Assocs., 318 F.3d 1 (1st Cir. 2003). Unlike the Acree case, however, Ms. Agha has already expended resources filing a Motion for Default Judgment and stood ready to participate in an evidentiary trial based upon her testimony. Defendant should not benefit from the Court's busy docket. Moreover, Defendant's willful refusal not only shows its disdain for this Court, it also conveniently provides more time for the accompanying dangers, decried in the Acree case and cited by Defendant, to manifest. Given the transient nature of employees that serve at an Embassy, there is significant risk of spoliation of evidence as well as difficulty in conducting discovery, including, but not limited to deposition testimony.

## III.   Defendant's Proffered Defenses Do Not Cure Its Willful Disregard for This Court's Rules and Procedures.[5]

Defendant's contention that sovereign immunity applies and is not subject to the commercial activity exception has been answered and refuted. "A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of

---

[5] Ms. Agha response to Defendant's claims of sovereign immunity have been fully briefed in her Memorandum in Opposition to Defendant's Motion to Dismiss.

conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. §1603(d).

The FSIA does not shield actions "based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). By statute, whether an act is commercial is dictated by the nature of the act, rather than its purpose. El-Hadad v. United Arab Emirates, 378 U.S. App. D.C. 67, 76 (2007). To be considered "commercial" under the FSIA an activity must be the "type of activity by which a private party engages in trade or commerce." Jam. Int'l Fin. Corp., 139 S.Ct. 759 (2010). Under this theory, "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." Samantar v. Yousuf, 560 U.S. 305, 312 (2010). "When a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." Republic of Arg. v. Weltover, Inc., 504 U.S. 607, 614 (1992); cf. Leutwyler v. Office of Her Majesty Queen Rania Al Abdull, 184 F. Supp. 2d 277, 291 (S.D.N.Y. 2001) (where the Court held that the act of a photographer taking photographs, developing them into prints, and assigning the rights to those photographs to a client are "garden-variety" commercial transactions, regardless of the fact that the photographer's client was a member of the Royal Family of Jordan). As Ms. Agha's has argued, the commercial activity exception should apply, rendering Defendant's sovereign immunity defense as meritless.

The proper time for Defendant to raise its non-jurisdictional defenses was in an Answer or Motion to Dismiss as provided in 28 U.S.C. 1608(d); Defendant failed to do so. As briefed in Ms. Agha's Memorandum in Opposition to Defendant's Motion to Dismiss, her claims were plausibly

pled in the Complaint sufficiently to defeat a Motion to Dismiss, rendering those alleged defenses as meritless.

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Set Aside the Entry of Default and award such other and further relief as this Court may deem fit.

Dated: November 1, 2024

Respectfully submitted,

<u>/s/ Zachary S. Aman, Esq</u>
D.C. Bar No.: 90014478
THE SPIGGLE LAW FIRM, PLLC
3601 Eisenhower Ave, Suite 425
Alexandria, Virginia 22304
Telephone: (202) 449-8527
Facsimile: (202) 517-9179
zaman@spigglelaw.com
*Attorney for Mariam Agha*

**Certificate of Service**

I HEREBY CERTIFY that, on November 1, 2024, I caused the foregoing Memorandum in Opposition to Defendant's Motion to Set Aside Entry of Default to be served, via electronic filing to Defendant's Counsel:

Joshua Erlich
DC Bar No. 1011008
Katherine L. Herrmann
DC Bar No. 1034189
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd. Suite 700
Arlington, Virginia 22209
Tel: (703) 791-9087
Fax: (703) 722-8114
jerlich@erlichlawoffice.com
kherrmann@erlichlawoffice.com
*Counsel for Defendant*

/s/ Zachary S. Aman, Esq.

1